```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                       SOUTHERN DIVISION at LONDON

BARBARA A. WILSON,                 )
                                   )
     Plaintiff,                    )
                                   )   Civil Action No. 07-312-JMH
                                   )
v.                                 )
                                   )
MICHAEL J. ASTRUE, COMMISSIONER    )   MEMORANDUM OPINION AND ORDER
OF SOCIAL SECURITY,                )
                                   )
     Defendant.                    )
                                   )
                                   )
```

                    **     **     **     **     **

This matter is before the Court on cross motions for summary judgment [Record Nos. 6 and 8][1] on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits. The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Barbara A. Wilson filed an application for Supplemental Security Income on August 9, 1999, alleging disability based on her high blood pressure, arthritis, diabetes, hernia, ulcer, and chronic bronchitis (Transcript of Record "Tr." 199).

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

Plaintiff's application for benefits was denied initially and upon reconsideration. On July 25, 2000, Administrative Law Judge John Lawrence (the "ALJ") conducted a hearing on Plaintiff's application. By decision dated September 26, 2000 (Tr. 199), the ALJ denied Plaintiff's claims, concluding that Plaintiff had "no impairment or combination of impairments which is "severe" within the meaning of the Social Security Regulations," thus, she was not disabled. *Id.* Plaintiff filed a request for review of the ALJ's decision on October 16, 2000. Because the tape of the July 25, 2000 hearing could not be located, on April 29, 2004, the Appeals Council ordered that the case be remanded to the ALJ to conduct another hearing.

The ALJ heard Plaintiff's claims for the second time on December 9, 2004. By decision dated April 13, 2005, the ALJ again denied Plaintiff's claim for benefits. (Tr. 25-29). Upon receiving Plaintiff's second request for review of the ALJ's decision, on July 9, 2007, the Appeals Council denied Plaintiff's request for review. The instant appeal followed.

At the time of the ALJ's most recent decision, the plaintiff was 60 years old. (Tr. 26). She ceased formal schooling in the 8th grade at the age of sixteen. *Id.* Plaintiff has past relevant work as a hotel housekeeper, restaurant cook and daycare worker. *Id.* In this appeal, Plaintiff argues that the ALJ "improperly discounted the medical evidence of record in deciding that Ms.

2

Wilson does not suffer from a "severe" impairment as defined by the Social Security Act." (Pl. Br. at 4).

## II. OVERVIEW OF THE ALJ HEARING

In determining whether a claimant is disabled or not, the ALJ conducts a five-step analysis:

> 1.) Is the individual engaging in substantial gainful activity? If the individual is engaging in substantial gainful activity, the individual is not disabled, regardless of the claimant's medical condition.
>
> 2.) Does the individual have a severe impairment? If not, the individual is not disabled. If so, proceed to step 3.
>
> 3.) Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1, subpart P of part 404 of the Social Security Regulations? If so, the individual is disabled. If not, proceed to step 4.
>
> 4.) Does the individual's impairment(s) prevent him or her from doing his or her past relevant work, considering his or her residual functioning capacity? If not, the individual is not disabled. If so, proceed to step 5.
>
> 5.) Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her residual functioning capacity together with the "vocational factors" of age, education, and work experience? If so, the individual is disabled. If not, the individual is not disabled.

*Heston v. Comm'r of Social Security,* 245 F.3d 528, 530 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. If

3

the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Sec'y of Health and Human Servs.,* 14 F.3d 1107, 1110 (6th Cir 1994).

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

### IV. ANALYSIS

The ALJ concluded that Plaintiff did not have an impairment, or combination of impairments, which could be defined as severe. An impairment or combination of impairments is "severe" if it

4

significantly limits the applicant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920. An impairment or combination of impairments is not severe if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985); *see also* 20 C.F.R. § 416.921(a). A claimant has the burden of proving the severity of her impairments. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

**Mental Impairment**

In support of her argument that the ALJ erred in finding she did not have a severe mental impairment, Plaintiff cites diagnoses of anxiety and depression in 1999 and 2000. The administrative record reveals that Plaintiff completed an intake interview at Seven Counties Services in September of 1999, at which time it was noted that Plaintiff suffered from dysthymia. (Tr. 194). In October 1999, the physician completing Plaintiff's medical report related to her disability application indicated that Plaintiff's psychiatric/psychological state was "normal." (Tr. 106).

Plaintiff did not begin therapy sessions at Seven Counties until March 2000. At that time, Dr. Patel, a psychiatrist with Seven Counties Services, diagnosed Plaintiff with major depressive disorder, post-traumatic stress disorder, and panic disorder

5

without agoraphobia. (Tr. 183). Merely one month after beginning therapy at Seven Counties, Dr. Patel noted that Plaintiff's anxiety was "mild." (Tr. 178). By May 2000, Dr. Patel noted that Plaintiff's dysthymia was also "mild". (Tr. 173). The record is devoid of any evidence of mental health treatment since 2000. In 2003, Dr. Mark Carter performed a consultative examination of Plaintiff. Dr. Carter reported that Plaintiff suffered from anxiety, but did not find that Plaintiff's anxiety interfered with her ability to function.

Plaintiff complains that the ALJ's "presumptive conclusion that Ms. Wilson suffers from no mental impairment" is not supported by substantial evidence. First, the Court notes that the ALJ did not find that the Plaintiff suffers from no mental impairments, he in fact found that Plaintiff has a "history of anxiety and depression." (Tr. 29). The ALJ simply found that any mental impairments are not severe, as defined by the Regulations. (Tr. 29). Additionally, and most importantly, there was substantial evidence to support the ALJ's conclusion. While Plaintiff was evaluated by Drs. Patel and Carter, there is no indication that Plaintiff's anxiety and/or depression prevented her from performing basic work activities such as to be classified as severe. *See Higgs,* 880 F.2d at 863 (6th Cir. 1988)(a mere diagnosis, without more, says nothing about the severity of a condition). Although Dr. Patel did describe Plaintiff's anxiety as "serious" in March of

6

2000, "serious," as used by a doctor, is not the same as "severe," as defined in the Regulations. Plaintiff's argument that her condition has "likely worsened" since her consultations with Dr. Patel and Dr. Carter is to no avail, as the Court cannot speculate as to Plaintiff's condition - it may only rely on the administrative record.

**<u>Physical Impairment</u>**

Plaintiff argues that the ALJ's determination that she did not suffer from a severe physical impairment is not supported by substantial evidence. There is medical evidence to support Plaintiff's claims that she suffers from arthritis, low back pain, diabetes, mild plantar fasciitis, high blood pressure, a deconditioned gait and has a history of chronic bronchitis. (Tr. 109, 152, 259). As stated, *supra,* however, diagnoses alone are not sufficient to determine the severity of one's condition. *See Higgs*, 880 F.2d at 863.

In her October 5, 1999 evaluation of Plaintiff, Dr. Hardesty noted that Plaintiff had "no limitations except from her obesity." (Tr. 106). Similarly, Dr. Dube noted on December 11, 1999 that despite Plaintiff's bilateral knee arthritis, low back pain, mild plantar fasciitis, and history of chronic bronchitis, she "appears to be functioning well." (Tr. 151). While Plaintiff may have correctly noted that there are many possible complications which could arise from her conditions, particularly the high blood

7

pressure and deconditioned gait, there is no evidence that Plaintiff suffers from such complications.

On August 19, 2003, Dr. Kamlesh confirmed Plaintiff's diagnoses of high blood pressure, Type II diabetes and arthritis; however, he made no assessment regarding Plaintiff's functional abilities. (Tr. 266). On December 1, 2004, Dr. Koff examined Plaintiff and noted that she should not lift more than twenty pounds at any one time and should not lift more than ten pounds frequently. Dr. Koff also limited Plaintiff to remaining on her feet for two hours at any one time and directed that she only sit for one hour at a time. (Tr. 278). Dr. Koff's findings were made in the absence of x-rays, although he noted the need to request x-rays. (Tr. 279).

It is Plaintiff's position that the opinions of Drs. Kamlesh and Koff support her claim of disabling arthritis. While Dr. Koff did place some restrictions on Plaintiff's functional abilities to sit, stand and lift, Dr. Kamlesh did not. Dr. Kamlesh, in fact, only noted that Plaintiff must accommodate her "hampered eye vision." (Tr. 267). In determining that Plaintiff's impairments were not severe, the ALJ relied on Dr. Carter's 2003 assessment of Plaintiff in which he found, *inter alia,* that Plaintiff had a normal gait, a full range of motion in peripheral joints, could get onto and off of the examining table without difficulty, and could only perform two-thirds of a knee squat.

There was substantial evidence to support the ALJ's determination that Plaintiff did not suffer from a severe impairment. Plaintiff is correct that the opinions of treating physicians are entitled to much deference, *see Warner v. Comm'r of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); however, the Court is not convinced that Dr. Koff, whose medical opinion was most favorable for Plaintiff, was a treating physician. While Dr. Koff did complete a medical assessment form in December of 2004, the record is devoid of any treatment notes from Dr. Koff indicating that he saw Plaintiff on more than one occasion. Even if Dr. Koff was a treating physician, the ALJ was within his discretion to base his decision on the reports of Drs. Carter, Kamlesh, Hardesty, and Dube, none of whom indicated Plaintiff had any functional limitations. *See* 20 C.F.R. § 416.927(d); *Walters v. Comm'r*, 127 F.3d 525, 529-30 (6th Cir. 1997)(the deference given to a particular physician's opinion depends on the extent to which it is supported by objective medical signs and the record as a whole).

## V. CONCLUSION

Accordingly, and for the foregoing reasons,

**IT IS ORDERED:**

(1) That the defendant's motion for summary judgment [Record No. 8] be, and the same hereby is, **GRANTED;** and

9

(2) That the plaintiff's motion for summary judgment [Record No. 6] be, and the same hereby is, **DENIED**.

This the 5th day of March, 2008.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge